## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jon2 LLC d/b/a Manny's on 2nd ("Jon2 LLC") and Adam Matschullat, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>National Football League, Inc.; NFL Enterprises, LLC; DirecTV, LLC; and DirecTV Holdings LLC,<br><br>                    Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Jon2 LLC d/b/a Manny's on 2nd ("Jon2 LLC") and Adam Matschullat ("Plaintiffs"), by and through their undersigned counsel, bring this action against Defendants National Football League, Inc.; NFL Enterprises, LLC (collectively "the NFL"); DirecTV LLC; and DirecTV Holdings LLC (collectively "DirecTV") (together, "Defendants"), on behalf of themselves and all other similarly situated persons, and allege, upon personal knowledge as to each of them and its or his own actions and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, as follows:

### INTRODUCTION

1.      Plaintiffs bring this class action on behalf of themselves and all other Class members (defined herein) who purchased from DirecTV the NFL Sunday Ticket between June 17, 2011 to the present ("the Class Period") for the purpose of either showing broadcasts which are exclusively part of NFL Sunday Ticket at a commercial establishment, such as a restaurant or bar, or for the purpose of watching the programing privately or with guests in their residences.

2.      Due to an exclusive agreement with the NFL, DirecTV has sole license for live televised game feeds of Sunday afternoon "out-of-market[1]" NFL games.  DirecTV packages these out-of-market NFL games as part of its exclusive "NFL Sunday Ticket" service, which it sells to both residential and commercial customers.  DirecTV has trademarked "NFL Sunday Ticket", and it is recognized as a separate product from games broadcast on Fox, CBS, NBC, ESPN and the NFL Network.

3.      This exclusive agreement allows DirecTV to charge supracompetitive prices for NFL Sunday Ticket.

4.      Plaintiffs and the Classes have been directly damaged by Defendants' restraint of trade which has been implemented through DirecTV's exclusive arrangement to broadcast out-of-market games.  Plaintiffs seek to recover treble damages along with reasonable attorneys fees and costs on behalf of themselves and the Classes as a result of Defendants' illegal actions.  In addition, Plaintiffs for themselves and the Class seek to enjoin the ongoing unreasonable restraint of trade as described herein.

## JURISDICTION AND VENUE

5.      Plaintiffs bring this action pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26) to secure monetary, equitable, and injunctive relief against Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1).

6.      This Court has subject matter jurisdiction over this action under Section 16 of the Clayton Act (15 U.S.C. § 26), Section 1 of the Sherman Act (15 U.S.C. § 1), and 28 U.S.C. §§ 1331 and 1337.

---

[1] "Out-of-market" NFL games are NFL games played on Sunday afternoon which are not otherwise broadcast on CBS, Fox or NBC within the viewer's television market.  This excludes games within the home territory of an NFL team which is not aired on CBS or Fox (or previously NBC) due to a failure to sell all of the tickets to that game prior to the blackout deadline for that game.

7.      This Court has personal jurisdiction over Defendants in the Southern District of New York.  Defendants National Football League, Inc. and NFL Enterprises LLC have their principal place of business in the Southern District of New York.  This Court has personal jurisdiction over DirecTV because DirecTV has considerable presence in the Southern District of New York, has offices in the Southern District of New York, and conducts substantial business in this District. Some of the actions giving rise to the complaint took place in this District.

8.      Venue is proper in this District under 28 U.S.C. § 1391 because Defendants transact business within the District, and key events establishing the claims arose in this District.

## PARTIES

9.      Plaintiff Jon2 LLC is a New York limited liability company that owns a bar named Manny's on 2nd which is located in Manhattan within New York City, New York. Plaintiff Jon2 LLC purchased NFL Sunday Ticket from DirecTV during the Class Period.

10.     Plaintiff Adam Matschullat is a resident and citizen of Spring Valley, California, an unincorporated community in San Diego County.  Plaintiff Adam Matschullat has purchased DirecTV service for his home with NFL Sunday Ticket since 2012.

11.     Defendant DirecTV Holdings LLC is a Delaware limited-liability company which has offices at 1 Rockefeller Center, New York, New York, in the Southern District of New York. DirecTV Holdings LLC is the U.S. operating arm of DirecTV, Inc.

12.     Defendant DirecTV LLC is a California limited-liability company that has its principal place of business at 2230 East Imperial Highway, El Segundo, California.  DirecTV LLS issues bills to its commercial and residential subscribers.

13.     Defendant National Football League, Inc. (the "NFL") is a corporation headquartered at 345 Park Avenue, 7th Floor, New York, New York, in the Southern District of New York  The NFL is owned by the 32 member football teams throughout the United States.

Each of these teams is separately owned and operated, each is headquartered in various cities across the United States, and each is organized under the laws of the various states.

14.     Defendant NFL Enterprises LLC is a Delaware limited-liability company, which is headquartered at 345 Park Avenue, 7th Floor, New York, New York in the Southern District of New York.  Upon information and belief, Defendant NFL Enterprises LLC was organized to hold the broadcast rights of the 32 NFL teams and to license those rights to various entities, including DirecTV.

## AGENTS AND CO-CONSPIRATORS

15.     Each Defendant acted as the principal of or agent for the other Defendants with respect to the acts, violations, and common course of conduct alleged herein.

16.     Various persons, partnerships, sole proprietors, firms, corporations, and individuals not named as Defendants in this Complaint, as well as individuals, the identities of which are not known at this time, participated as co-conspirators with Defendants in the offenses alleged herein.  These persons or entities have performed acts or made statements in the furtherance of the conspiracy or in furtherance of anticompetitive conduct.

17.     Wherever in this Complaint reference is made to any act, deed, or transaction of any corporation or limited-liability entity, the allegation means that the corporation or entity engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's or entity's business or affairs.

## RELEVANT MARKET

18.     The relevant geographic market is the United States of America.

19.     The relevant product market is NFL Sunday afternoon out-of-market games as described *supra*.  Broadcasts of other sports or other content do not compete with broadcasts for

4

out-of-market NFL games.  NFL games broadcast locally on CBS and Fox Broadcasting on Sunday afternoons are not interchangeable with NFL Sunday Ticket specifically because the local games are different from the multi-game offering provided by NFL Sunday Ticket.

20.     DirecTV distinguishes between residential and commercial subscribers.  DirecTV offers different packages and prices on its website and within its service plans for residential and commercial subscribers, both in general and for NFL Sunday Ticket.  Further, bars and restaurants have distinct prices for NFL Sunday Ticket (as well as other sports packages) that are different from those of other commercial subscribers.

21.     While there may be some substitution between in-market broadcasts (i.e. games that include the local NFL team) and out-of-market broadcasts, in-market games do not foreclose a monopolist's ability to raise the price of out-of-market games above competitive levels.

## SUBSTANTIVE ALLEGATIONS

**A.      The NFL Is The Only Major Sports League with an Exclusive Out-of-Market Agreement**

22.     As stated above, DirecTV is the sole distributor of "out-of-market" games for the NFL.  Through NFL Sunday Ticket package and its agreement with DirecTV, NFL sells to both residential customers and commercial customers the right to view these out-of-market games. This exclusive arrangement between the NFL and DirecTV allows DirecTV to charge supracompetitive prices for this distribution. DirecTV states on its website, "Only DIRECTV brings you every out-of-market game live, every Sunday."[2]

23.     Each of the 32 NFL member teams has agreed with each other and the NFL to grant the NFL the exclusive right to market televised games.

---

[2] http://www.directv.com/sports/nfl, last accessed Aug. 19, 2015.

24.     Out of the four major professional sports leagues in the United States (football, baseball, basketball and hockey), only the NFL has exclusive out-of-market broadcast arrangements.  Major League Baseball, the National Basketball Association, and the National Hockey League all distribute their respective live out-of-market games through multiple multi-channel video programming distributors ("MVPDs").  These MVPDs include DirecTV, Dish Network, Comcast, Cox Cable and Time Warner.

25.     As a result of the agreement between the NFL and DirecTV, competition for out-of-market games in the NFL has been eliminated, and DirecTV's MVPD rivals are foreclosed from offering competing programs.  As such, DirecTV can demand supracompetitive prices for its service compared to the prices it charges for sports packages in markets where it faces competition.

26.     Cox Cable has stated to the FCC that "the exclusivity deal causing the most significant market distortion today is DirecTV's Sunday Ticket package".[3]

27.     Also, Economist Roger Noll testified before the FCC in 2006 regarding NFL Sunday Ticket.  He stated: "From my perspective, if one adopts the right counterfactual, the right but-for world in the competitive environment, it is obvious that NFL Sunday Ticket is a palliative to the output and prices that would exist in a competitive environment."[4]

28.     Dish Network has stated, in promotional materials for its product, "DirecTV's flagship exclusive promotion is that they are the only TV provider to offer the NFL Sunday Ticket. . . [T]he people who want it pay it, and they love it. If you want the NFL Sunday Ticket, then DirecTV wins this battle every time. DISH does not carry it."[5]  Clearly, Dish Network (and

---

[3] Comments of Cox, FCC MB Docket Nos. 12-68, 07-18, 05-192 at 3.

[4] Testimony of Roger Noll before the Committee on the Judiciary, United States Senate, Nov. 14, 2006.

[5] http://www.satellitesolutions.com/dishnetwork/dish-vs-directv.asp, last accessed Aug. 19, 2015.

other MVPDs) would compete for out-of-market NFL games if given they were not illegally foreclosed from doing so.

29.     In 2002, DirecTV's rights to Sunday Ticket expired. ESPN has reported that, in part, the NFL renewed its agreement with DirecTV because the NFL "wanted an all-encompassing package" which could be sold at a high price point.

30.     NFL Sunday Ticket is available in Canada on a non-exclusive basis through multiple satellite and cable providers. Similarly, the NFL's "Red Zone" package, which offers game highlights, is also offered on a non-exclusive basis through many MVPDs.

**B.     Defendants Earn Supracompetitive
        Profits from The Exclusive Agreement**

31.     The exclusive agreement between the NFL and DirecTV has been lucrative for both parties. Forbes has reported that DirecTV, during its most recent renewal in 2015, will now be paying the NFL $1.5 billion per year for the next eight years to keep the rights to NFL Sunday Ticket. In the same article, Forbes noted that CBS, NBC and Fox all pay around $1 billion a year for their coverage rights.[6]

32.     Further, DirecTV now has also secured exclusive out-of-market streaming rights for computers, smartphones, tablets, and gaming consoles. *Id.*

33.     The deal between DirecTV and the NFL was seen as so lucrative to DirecTV that AT&T's merger agreement with DirecTV offered it the option to "walk away from the deal with no penalty" if DirecTV failed to renew the exclusive agreement. *Id.*

---

[6] http://www.forbes.com/sites/greatspeculations/2014/10/08/directv-extends-its-deal-with-nfl-for-12-billion/, last accessed Aug. 19, 2015.

### C.   **Commercial Subscriptions Are Priced Supracompetitively**

34.     NFL Sunday Ticket subscriptions are highly valuable to many commercial subscribers, particularly bars and restaurants.  Establishments with NFL Sunday Ticket are able to offer their patrons the ability to watch multiple out-of-market games on Sundays.

35.     Additionally, NFL Sunday ticket locks commercial subscribers into purchasing DirecTV service throughout the year.

36.     As a result, DirecTV charges supracompetitive prices for NFL Sunday Ticket. Commercial subscribers for NFL Sunday Ticket are charged fees based on the maximum occupancy of their establishment as set by the local fire code.  The least expensive package is currently set at $1,458 for this season.  The most expensive package is currently set at more than $120,000.

37.     The prices charged by DirecTV have increased dramatically during the Class Period.

38.     In contrast, Major League Baseball, the National Basketball League and the National Hockey League all offer out-of-market packages both through DirecTV and other MVPDs.

### D.   **Residential Subscriptions Are Also Priced Supracompetitively**

39.     DirecTV now offers several price points for NFL Sunday Ticket, depending on duration, platform, and even whether the subscriber is a student.  Sporting News has reported that for this season, NFL Sunday Ticket packages "range from $49.99 to $89.99 a month for four months, totaling $199 to $359."[7]

---

[7] http://www.sportingnews.com/nfl/story/2015-08-11/nfl-sunday-ticket-how-to-watch-get-channels-directv-subscription-price-cost, last accessed Aug. 19, 2015.

40.     Residential customers also have the option of subscribing to Center Ice (the NHL's out-of-market service) and Extra Innings (MLB's out-of-market service) through competing MVPDs such as iN Demand and Dish Network at competitive prices and as part of comprehensive packages that further reduce costs on a per-package basis.

### E.     The Out-of-Market NFL Game Market Is Structured Anticompetitively

41.     DirecTV treats commercial subscribers and residential subscribers differently. DirecTV has a portion of its website titled "DirecTV for Business", which includes a subsection for restaurants and bars.

42.     While some substitution may occur between in-market NFL games and out-of-market games on a week-to-week basis, the availability of in-market games does not affect Defendants' ability to raise prices for out-of-network games above competitive levels.

43.     New entrants into to the market for out-of-market games would dilute Defendants' market power and have thus been foreclosed by Defendants exclusive agreement from broadcasting out-of-market games.

44.     Defendants' market power can only be reduced by removing the underlying collusive agreement, or if that agreement is replaced by non-exclusive licenses.

### F.     Defendants' Exclusive Agreement Has No Pro-Competitive Justification

45.     Defendants' exclusive agreement is only necessary to preserve the market power for out-of-market games created by the NFL member teams' collusive agreement.  Without the agreement between the member teams, price competition between DirecTV and other MVPDs would create lower-priced and more-varied options for consumers.

46.     There is no evidence that Defendants' exclusive agreement was created to ensure broadcast quality, owner oversight, or any other pro-competitive justification.

47.    In fact, CBS and Fox are contractually obligated to produce the games shown in NFL Sunday Ticket and to air them in over-the-air broadcasts for in-market games.   The exclusive agreement was solely created to drive up the price of out-of-market games.

48.    Rob Stecklow, General Manager of Sports Products and Marketing for DirecTV has publicly admitted that "[i]n this time and era where there's less and less content that's exclusive, the NFL still reigns as some of the best content out there."

49.    Conversely, DirecTV has long fought to gain access to "regional sports networks" (RSNs) to have access to local sports markets on a non-exclusive basis.  In 2012, DirecTV wrote the FCC in support of a ban on vertically-integrated cable companies from withholding access to RSNs from MVPDs, stating that "potential harm to competition . . . results when a cable-affiliated programmer withholds content from rival MVPDs."  As an example, DirecTV stated that it "gained substantially more subscribers in San Diego…than would have been expected based on its subscribership trends in comparable markets" after it and other competitors acquired the rights to broadcast the San Diego Padres Major League Baseball team.  DirecTV clearly understands that consumers benefit from non-exclusive sports distribution agreements.

50.    Defendants also cannot look to Canada to offer pro-competitive justification for NFL Sunday Ticket.  There NFL Sunday Ticket is offered on a non-exclusive basis through more than a dozen providers.

## CLASS ACTION ALLEGATIONS

51.    Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and/or (b)(3) on behalf of themselves and all DirecTV subscribers who received NFL Sunday Ticket as part of their subscription and the class consists of two subclasses:

> (a) All DirecTV commercial subscribers from DirecTV, or any current or former subsidiary or affiliate thereof, at any time beginning June 17,

2011 and continuing until Defendants' anticompetitive conduct ceases (the "Commercial Sub-Class").

(b) All DirecTV individual subscribers from DirecTV not for commercial intent, or any current or former subsidiary or affiliate thereof, at any time beginning June 17, 2011 and continuing until Defendants' anticompetitive conduct ceases (the "Residential Sub-Class").

Excluded from the Class are Defendants, their present and former parent companies, subsidiaries, affiliates, any co-conspirators, federal government entities and instrumentalities of the federal government, states and their subdivisions, and agencies and instrumentalities.

52.     Together, the Commercial and Residential subclasses are collectively referred to herein as the "Class".

53.     The Class is so numerous that joinder of all members is impracticable.

54.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

55.     Plaintiffs' claims are typical of the claims of the Class.  As alleged herein, Plaintiff and members of the Class all sustained damages arising out of Defendants' same course of unlawful conduct.

56.     There are questions of law and fact common to the Class, including but not limited to:

- Whether Defendants and their co-conspirators engaged in or continue to engage in a contract, combination, or conspiracy among themselves to fix, raise, maintain or stabilize the prices of NFL Sunday Ticket by eliminating competition in the relevant market of out-of-market football games in the United States;

- Whether Defendants have engaged in or continue to engage in a contract, combination, or conspiracy among themselves to fix, raise, maintain, or stabilize the prices of NFL Sunday Ticket by preventing any competitor from offering competing products;

- Whether the alleged unlawful agreement in restraint of trade violated Section 1 of the Sherman Act;

- Whether the conduct of Defendants and their co-conspirators caused injury to Plaintiffs and the Class;

- Whether the conduct of Defendants caused a supracompetitive rise in the price of NFL Sunday Ticket sold during the Class Period;

- The appropriate injunctive and equitable relief for the Class; and

- The appropriate damages to the Class.

57.    The interest of Class members in individually controlling the prosecution of separate actions is theoretical and not practical.  The Class has a high degree of similarity and is cohesive.  Prosecution of the action through multiple representatives would be objectionable and Plaintiff anticipates no difficulty in the management of this matter as a class action.

58.    Class action status is also warranted under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

59.    Class action status is also warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Class predominate over any questions affecting only individual class members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF

### VIOLATION OF SECTION 1 OF THE SHERMAN ACT

60.    Plaintiffs repeat and reassert each of the allegations contained in the preceding paragraphs as if fully alleged herein.

61.    Beginning at a time not presently known to Plaintiffs, and continuing through the present, Defendants entered in to a continuing agreement, combination or conspiracy in restraint of trade with the purpose, intent, and effect of restraining horizontal competition in the live NFL football game distribution market with the purpose, intent and effect of restraining trade and commerce in the distribution and broadcast of live NFL football games in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

62.    This agreement, combination, or conspiracy has resulted in an agreement or understanding between Defendants that NFL Sunday Ticket will be exclusively provided by DirecTV.  This agreement forbids any other competitor from offering a similar or competing product.

63.    This agreement, combination, or conspiracy has also restrained competition between and among DirecTV and potential competitors in violation of Section 1 of the Sherman Act.  It has led to anticompetitive acts in the relevant markets, as alleged herein, and has caused injury to consumers and to competitions in those relevant markets.

64.    The NFL and its member teams have monopoly power with respect to the creation, licensing, and distribution of NFL games.  DirecTV has market power in the relevant market, generally and specifically in the market for commercial and residential subscribers. DirecTV's exclusive arrangement with the NFL for the distribution of NFL Sunday Ticket

enhances DirecTV's market power in the relevant market, generally.  It also provides DirecTV with a monopoly in the market for the live distribution of NFL games through NFL Sunday Ticket.

65.     Defendants' contract, combination, agreement, or understanding occurred within and affected interstate commerce.  Defendants' unlawful conduct was through mutual understandings, combinations, or agreements by, between and among Defendants.

66.     Defendants' anticompetitive conduct has directly and proximately caused antitrust injury, in the form of higher prices and reduced output, as set forth above.  Plaintiffs and members of the Classes have suffered and will continue to suffer antitrust injury unless Defendants are enjoined from continuing to engage in this violation.

67.     As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiffs and the Classes have been injured in their business and property and are threatened with further injury.  Accordingly, Plaintiff and the Classes seek injunctive and equitable relief.

## SECOND CLAIM FOR RELIEF

### VIOLATION OF SECTION 1 OF THE SHERMAN ACT

68.     Plaintiffs repeat and reassert each of the allegations contained in the preceding paragraphs as if fully alleged herein.

69.     Beginning at a time not presently known to Plaintiffs, and continuing through the present, Defendants entered in to a continuing agreement, combination or conspiracy in restraint of trade with the purpose, intent, and effect of restraining horizontal competition in the live NFL football game distribution market with the purpose, intent and effect of restraining trade and commerce in the distribution and broadcast of live NFL football games in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

70.    This agreement, combination, or conspiracy has resulted in an agreement or understanding between Defendants that NFL Sunday Ticket will be exclusively provided by DirecTV.  This agreement forbids any other competitor from offering a similar or competing product.

71.    This agreement, combination, or conspiracy has also restrained competition between and among DirecTV and potential competitors in violation of Section 1 of the Sherman Act.  It has led to anticompetitive acts in the relevant markets, as alleged herein, and has caused injury to consumers and to competitions in those relevant markets.

72.    The NFL and its member teams have monopoly power with respect to the creation, licensing, and distribution of NFL games.  DirecTV has market power in the relevant market, generally and specifically in the market for commercial and residential subscribers. DirecTV's exclusive arrangement with the NFL for the distribution of NFL Sunday Ticket enhances DirecTV's market power in the relevant market, generally.  It also provides DirecTV with a monopoly in the market for the live distribution of NFL games through NFL Sunday Ticket.

73.    Defendants' contract, combination, agreement, or understanding occurred within and affected interstate commerce.   Defendants' unlawful conduct was through mutual understandings, combinations, or agreements by, between and among Defendants.

74.    Defendants' anticompetitive conduct has directly and proximately caused antitrust injury, in the form of higher prices and reduced output, as set forth above.  Plaintiffs and members of the Classes have suffered and will continue to suffer antitrust injury unless Defendants are enjoined from continuing to engage in this violation.

75.     As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiffs and the Classes have been injured in their business and property and are threatened with further injury.  Accordingly, Plaintiff and the Classes seek injunctive and equitable relief.

### THIRD CLAIM FOR RELIEF

### VIOLATION OF SECTION 2 OF THE SHERMAN ACT

### Violation of Section 2 of the Sherman Act, 15 U.S.C. §2

76.     Plaintiffs repeat and reassert each of the allegations contained in the preceding paragraphs as if fully alleged herein.

77.     Defendants, as alleged herein, have monopoly power over the creation, licensing, and distribution of live NFL football game broadcasts and have used that power to unreasonably exclude or limit competition in violation of Section 2 of the Sherman Act (15 U.S.C. § 2) by limiting the distribution of the NFL Sunday Ticket service to only one provider, DirecTV.  These activities cannot be considered "legitimate business activities" and abuse Defendants' market positions.

78.     Defendants have willfully and intentionally engaged in anticompetitive conduct in order to unlawfully maintain its monopoly in these markets, in violation of Section 2 of the Sherman Act, 15 U.S.C. §2.

79.     Defendants have unreasonably restrained, and further threaten to continue to unreasonably restrain, competition in the NFL football game broadcast market by their ongoing conduct.

80.     The conduct of Defendants is continuing and will continue to impose antitrust injury on members of the Classes unless injunctive and equitable relief is granted.

81.     As a direct, foreseeable, and proximate result of Defendants' anticompetitive and monopolistic conduct, Plaintiffs and the Classes have been injured in their business and property

16

and are threatened with further injury.  Accordingly, Plaintiff and the Classes seek injunctive and equitable relief.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Classes as proposed in this complaint, respectfully request that the Court enter judgment in their favor and against Defendants, as follows:

1.      Declaring that this action is a proper class action, certifying the Commercial and Residential Classes as requested herein, designating Plaintiffs as the Commercial and Residential Representatives, and appointing Plaintiff's attorneys as Class Counsel;

2.      Enjoining Defendants from continuing the anticompetitive practices alleged in this Complaint;

3.      Finding Defendants jointly and severally liable for the conduct alleged in this Complaint;

4.      Ordering Defendants to pay treble damages (including punitive damages) to Plaintiffs and the other Class members, as allowable by law;

5.      Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded;

6.       Ordering Defendants to pay attorney fees and costs of suit; and

7.      Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated: August 24 2015

       Respectfully submitted,

       **WOLF HALDENSTEIN ADLER**
        **FREEMAN & HERZ LLP**


       Fred Taylor Isquith, Sr.
       Thomas Burt
       Michael Liskow
       Patrick Donovan
       270 Madison Avenue
       New York, New York 10016
       (212) 545-4600

       Carl Malmstrom
       Theo Bell
       **WOLF HALDENSTEIN ADLER**
        **FREEMAN & HERZ LLC**
       One South Dearborn St.
       Suite 2122
       Chicago, IL 60603
       (312) 984-0000

whafhNY782412

18